UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERA ANN JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>Defendant. | No. 1:23-cv-00733-GSA<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 12, 14)** |

### I.  Introduction

Plaintiff Vera Ann Jackson seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.[1]  Because substantial evidence and applicable law do not support the ALJ's decision, the appeal will be granted.

### II.  Factual and Procedural Background

On September 15, 2019, Plaintiff applied for disability insurance benefits alleging disability as of October 12, 2017.  The Commissioner denied the application initially on December 17, 2019, and on reconsideration on April 13, 2020.  The ALJ held a hearing on January 26, 2022.  AR 43–70.  On March 25, 2022, the ALJ issued a partially favorable decision finding that Plaintiff was disabled from October 12, 2017 through March 10, 2020, but was not disabled thereafter.  AR 16–42.  The Appeals Council denied review on January 5, 2023 (AR 4–9) and this appeal followed.

### III.  The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  Docs. 5 and 7.

Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically

determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of October 12, 2017. AR 24.

At step two the ALJ found that from October 12, 2017 through March 10, 2020, the period during which Plaintiff was found disabled, Plaintiff had the following severe impairments: breast cancer, lumbar degenerative disc disease, postural orthostatic tachycardia syndrome ("POTS"), fibromyalgia, irritable bowel syndrome, chronic fatigue syndrome, right shoulder labral tear, migraines, asthma, obesity, major depressive disorder, generalized anxiety disorder, and borderline personality disorder. AR 24.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) with the following limitations:

> she could occasionally climb ramps and stairs, balance, crouch, crawl, stoop, bend, and kneel. She could not climb ladders, ropes, or scaffolds. She would need to avoid exposure to unprotected heights, dangerous or moving machinery, and machine parts. She would need to avoid exposure to extremes of temperature, vibration, humidity, and respiratory irritants, such as chemicals, dust, odors, fumes, as well as poorly ventilated areas. She could occasionally reach with her right upper extremity, but could constantly handle, finger, feel bilaterally, and constantly reach with her

left upper extremity. She could understand, remember and carryout simple tasks and instructions in a goal-oriented job, which is not done at an assembly line, piece work, or at a production quota pace. She could sustain concentration, attention and persistence on those simple tasks for two or more hours at a time. She could occasionally interact with supervisors and coworkers. She could respond appropriately to routine workplace changes given occasional support. *She would be off task greater than 15 percent of the time and/or miss more than one day a month from an inability to concentrate on tasks, persist in job duties, or to remain on a necessary job pace, from a combination of symptoms, limitations, treatment, and side effects of treatment from severe impairments*.

AR 25 (emphasis added).

At step four the ALJ concluded that Plaintiff could not perform her past relevant work as a teacher's aide II. AR 27. At step five the ALJ concluded that there were no jobs existing in significant numbers in the national economy that Plaintiff could perform for the period between October 12, 2017 and March 10, 2020, and that Plaintiff was therefore disabled during that time period. AR 27–28.

The ALJ made several contrasting findings as to the period beginning March 11, 2020, many of which are not in dispute. In pertinent part, the ALJ found that medical improvement had occurred in Plaintiff's psychiatric condition as of March 11, 2020, such that she was capable of performing the work activity described in the above-quoted RFC but without the two italicized limitations as to 15 percent or more off task behavior and more than 1 absence per month due to her psychiatric conditions-- which were the work-preclusive limitations according to the VE, AR 69. AR 33–37. With the removal of those limitations in the revised RFC the ALJ found that as of March 11, 2020 there were jobs existing in significant numbers in the national economy that Plaintiff could perform, namely: ticket taker, garment sorter, and routing clerk. AR 37.

Accordingly, the ALJ concluded that Plaintiff was disabled for the period between October 12, 2017 and March 10, 2020, but was not disabled thereafter. AR 37.

**V.     Issues Presented**

Plaintiff asserts three claims of error: 1- the ALJ's RFC determination is not supported by substantial evidence because he failed in his duty to complete the record and obtain an opinion of Plaintiff's mental RFC from an examining physician, 2- the ALJ's Step 5 determination is

unsupported by substantial evidence as there are clear discrepancies between the job descriptions and the limitations set forth in the RFC, and 3- the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer any reason for rejecting Plaintiff's subjective complaints.  MSJ at 3 (Doc. 12).

### A.     Mental RFC

#### 1.     Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

#### 2.     Analysis

By way of background, during the period she was found disabled Plaintiff was diagnosed

with breast cancer, underwent multiple surgeries, suffered exacerbated depression, experienced suicidal ideation, and required inpatient psychiatric hospitalization followed by intensive outpatient programs culminating in March 2020.  AR 25–27 (citing AR 291-98, 2506, 3668-69. 1810, 1871, 1877, 2506, 3668).

At issue is the ALJ's revised RFC for the period beginning March 11, 2020, and the ALJ's reasoning in support of same.

Plaintiff contends the ALJ should have obtained a consultative examination and opinion about Plaintiff's mental functionality as of the purported date of her medical improvement on March 11, 2020, through the date of the ALJ's decision on March 25, 2022.  *See* MSJ at 10, Doc. 12.  Plaintiff emphasizes that the non-examining state agency doctors who reviewed her medical file at the initial and reconsideration levels only had access to medical evidence through March of 2020, but not the two years that elapsed between that date and the date of the ALJ's decision.  Thus, the RFC for that time period was erroneously based on the ALJ's lay interpretation of the medical evidence.  *See* MSJ at 7–9.

Plaintiff's argument here is largely predicated on several pages of block quotations and citations to caselaw noting that ALJ's are unqualified to interpret raw medical data and translate it into functional terms:

> "Still, an ALJ cannot make medical judgments, only legal judgments." Howell v. Kijakazi, 20-CV-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) (citing Duarte v. Saul, No. 2:19-cv-01019 AC, 2020 WL 5257597, at *5 (E.D. Cal. Sept. 3, 2020) (citing Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)). "Barring a few exceptions, an ALJ must have a doctor's opinion of a claimant's functional capacity in order for there to be substantial evidence supporting the decisions." Howell, 2022 WL 2759090, at *7 (citing Duarte, 2020 WL 5257597, at *5 (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) ("With exceptions, ... an ALJ, as a layperson, is not qualified to interpret raw data in a medical record.")).
> "In formulating an RFC, an ALJ cannot interpret raw medical data." Id. (citing Day, 522 F.2d at 1156 (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside the record to consult medical textbooks for the purpose of making his own assessment of the claimant's physical condition);

Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, ..., the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); Manso–Pizarro, 76 F.3d at 17; Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.")). "[R]ecords [that] generally reflect only the findings, impressions, and medical diagnoses, are difficult for a lay person to interpret." Id.(citing Escudero v. Comm'r of Soc. Sec., No. 1:18-CV-01136-EPG, 2019 WL 4917634, *2 (E.D. Cal. Oct. 4, 2019) (finding "descriptions of medical documents post-dating the physician's opinions appear to be very medical in nature and not susceptible to a lay understanding.")). While the ALJ may discuss the medical records, when the records do not describe any functional limitations, the ALJ is not permitted to "independently evaluate[] Plaintiff's functional capabilities and improperly substitute[] his judgment for that of a medical expert." Id. (citing Stevenson v. Colvin, 2:15-cv-0643 CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015) (citing Manso-Pizarro, 76 F.3d at 17) (finding the ALJ improperly interpreted raw medical data when the treatment records only included impressions and diagnoses without any opinion on the impairments effect on Plaintiff's ability to work); Nguyen, 172 F.3d at 35 (reversing and remanding for further proceedings where the ALJ made an RFC determination that was based on his own interpretation of raw medical data not supported by medical opinion evidence)).

Plaintiff's cited caselaw is neither controlling nor applicable. In this matter the ALJ did not go outside the record to consult medical textbooks, nor did the ALJ interpret raw medical data. Importantly, Plaintiff highlights no cases suggesting that a therapist's progress notes or a physician's mental status examination findings concerning issues such as appearance, eye contact, mood, memory, and judgment, as the ALJ reviewed here, constitute "raw medical data" beyond a layperson's comprehension.

Further, Plaintiff incorrectly suggests that the order and timeline of events was in some way anomalous or irregular. Of note, there is always going to be a gap in time between the non-examining state agency physicians' reviews at the initial/reconsideration level and the ALJ's subsequent hearing decision. Claimants routinely continue pursuing care in the interim thereby generating new medical records. The mere passage of time along with the presence of additional medical evidence does not necessarily require a new consultative examination, otherwise a consultative exam would be required in every case. The regulations provide that the agency may

obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case. *See* 20 C.F.R. § 404.1519; *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) (unpublished) (noting there "is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time.").

Although an ALJ does not have unlimited discretion to do so, an ALJ is almost always tasked with performing some independent review of medical evidence that was not considered by one of the agency's reviewing physicians and then subsequently translating into an RFC. This is consistent with the ALJ's role as articulated by the Ninth Circuit. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015), ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Nevertheless, Plaintiff's argument is well taken that the ALJ's RFC analysis and the related but distinct analysis of the "paragraph B" criteria and the four broad areas of mental functioning, is unsupported by substantial evidence in that the ALJ ignored pertinent evidence concerning Plaintiff's report of cutting, desire for self-harm, and suicidal ideation. This argument has little to do with the ALJ's duty to develop the record with a consultative examining opinion when appropriate, though Plaintiff discussed both arguments in the same section.

The evidence Plaintiff describes included telehealth and/or in person psychiatric visits at Kaiser Permanente, as well as electronic correspondence with her treatment team dated March 18, 2020; March 24, 2020; April 1, 2020; April 10, 2020; April 15, 2020; April 17, 2020; April 29, 2020; May 19, 2020; May 20, 2020; May 26, 2020; June 10, 2020; June 11, 2020; June 12, 2020; June 18, 2020; June 24, 2020; July 1, 2020; July 21, 2020; August 5, 2020; August 19, 2020; September 2, 2020; October 14, 2020; January 18, 2021; February 19, 2021; March 17, 2021; April 14, 2021; June 4, 2021; June 30, 2021; July 9, 2021; July 19, 2021; August 16, 2021; October 8,

2021; October 22, 2021; November 17, 2021; December 8, 2021; and December 21, 2021.

These visit notes variously reflected that: 1- Plaintiff repeatedly reported cutting herself or reported the desire to do so; 2- she reported passive suicidal ideation; 3- she emailed her treatment team regarding a suicide plan; 4- she wrote a suicide letter; 5- her providers variously noted tearful behavior, anxious mood, depressed mood, irritable mood, fair impulse control, fair insight, fair judgment; 6- her hydroxyzine and lithium doses were periodically increased; and, 7- her providers noted concern about her suicidal email correspondence and expressed that the emails were inappropriate. AR 2622–23, 2629–33, 2638–39, 2644, 2651–52, 2709, 2718, 2686, 2681, 2676, 2746–47, 2753, 2763, 2770, 2773, 2798, 2812, 2839, 2849–50, 2861–62, 2895–96, 2930, 2954, 2958, 2977, 3001, 3015–16, 3045, 3075, 3090, 3120, 3169, 3179, 3189, 3196, 3208, 3219.

The ALJ's discussion of this evidence was selective in that the ALJ did not discuss the repeated references to suicidal ideation, cutting, and desire for self-harm despite citing and describing other benign aspects of the same examinations:

> On March 9, 2020, the claimant was discharged from an intensive outpatient program at Kaiser Permanente and while later that month she reported "severe" anxiety, she indicated she had only moderate depression and there were no serious objective findings at her therapy sessions (Exs. 6F/1228-1233, 6F/1245). The claimant's therapist, Karen Julian-Arax, discussed with the claimant in April 2020 that her "AOQ" (Adult Outcomes Questionnaire) scores had "notably improved," and her mental status examination was unremarkable (Ex. 6F/1331-1332). While the claimant reported feeling "extremely overwhelmed" in May 2020, this was in the context of having taken care of her disabled brother for six days without a break, and her mental status was only mild (Ex. 6F/1339-1340). Later in May 2020, the claimant informed her psychiatrist, Olga Victa, M.D., that she was "okay," and her mental status examination was unremarkable apart from fair insight, judgment, and impulse control (Ex. 6F/1348-1351). Dr. Victa noted that the claimant had been taking a lower dose of Lexapro with no changes in mood, and that the claimant's mood had "been better and stabilizing" and that the claimant should continue to taper her Lexapro (Ex. 6F/1352). Her assessment was major depressive disorder, generalized anxiety disorder, and borderline personality disorder (Ex. 6F/1352).
>
> The claimant's mental status continued to be stable throughout the remainder of 2020 and she reported increasing activities, with only a brief episode of increased paranoia during her medication taper (Exs. 6F, 6F/1374). In June 2020 she reported that she had joined a poetry website and started sharing her writing (Ex. 6F/1356).

> The claimant had some increasing depression and anxiety in late June, but this was noted to be in the context of "environmental stressors" and her medication was adjusted (Ex. 6F/1355). She again reported feeling better in July 2020 and her mental status was essentially unremarkable later that month (Exs. 6F/1419, 6F/1453). In late 2020 the claimant was generally stable, with mild at most finding on mental status examination, despite having to deal with issues of care for her disabled brother and the passing of her father (Exs. 6F/1472, 6F/1499, 6F/1515, 6F/1531). In October 2020, the claimant reported that she was no longer journaling or drawing as much, and her therapist discussed the possibility that she no longer needed to do so as often (Ex. 6F/1532). The claimant also discussed taking a break from therapy, due in part to her therapist's changing role at the clinic (Ex. 6F/1532).
>
> The claimant continued to be generally stable with regard to her mental health throughout the period at issue, with conservative treatment and no serious ongoing objective findings. In January 2021, the claimant reported that her symptoms had significantly worsened during an episode of poor medication compliance, but she was feeling better after one week of full medication compliance (Ex. 6F/1552). The claimant returned to therapy in February 2021, reporting an increase in depression symptoms, but her mental status examination was mild overall and she informed her new therapist, Maria Romero, that she was "doing okay" at follow up in March 2021 (Exs. 6F/1576-1580, 6F/1598). The undersigned notes that although the claimant reported some significant environmental stressors at times, there were no serious objective findings and she did not report serious ongoing limitations to her activities (Exs. 6F/1652, 6F/1742, 6F/1811, 6F/1830).

Defendant emphasizes the ALJ's reliance of a conservative treatment history on and after March 10, 2020, and the lack of significant objective findings. Resp. at 7–8, Doc. 14. The ALJ also described Plaintiff's subjective reports, but mostly to the extent they suggested improved functioning while omitting discussion of Plaintiff's suicidal ideation and self-harm. However, this was not exactly a balanced overview of these treatment records.

To the extent the ALJ did acknowledge Plaintiff's reports of feeling "extremely overwhelmed" or "severely" anxious, Defendant contends that the ALJ appropriately characterized those instances as responses to situational or environmental stressors, such as caring for her disabled brother, and medication non-compliance. Resp. at 8. But it is not a given that caring for her disabled brother while dealing with her own psychiatric issues post-discharge from intensive care was merely a temporary "situational stressor" as opposed to a longer term obligation. Further, the medication non-compliance as described by the ALJ only lasted 1 week before it was corrected.

10

By contrast, as cited above, Plaintiff repeatedly reported to her psychiatric team at Kaiser during the period of March 18, 2020 to December 21, 2021, that she had suicidal ideation and a desire for self-harm.

Finally, Defendant emphasizes that despite Plaintiff's reports of suicidal ideation and self-harm, "Plaintiff's providers consistently found 'no significant [suicide risk] factors reported/observed.' Tr. 2623, 2639, 2652, 2710, 2747, 2839, 2850, 2863, 2959, 3220." Indeed, the lack of significant suicidal risk was part of the basis for her discharge from inpatient and outpatient intensive psychiatric treatment programs on February 26, 2020 and March 9, 2020, respectively, though she reported self-harm as a symptom even as of the day of her discharge from the latter. AR 2519, 2599.  However, passive suicidal ideation and self-harm are still functionally relevant as a claimant need not be in intensive psychiatric treatment, or be considered an active significant suicide risk in order for the patient's suicidal ideation and self-harm to result in off task behavior more than 15 percent of the workday, or miss more than 1 workday per month due to distractions from symptoms.  Thus, the ALJ's disregard of those ongoing symptoms was harmful error requiring remand.

### B.     Jobs Identified by the VE

Plaintiff contends there is an inconsistency between the RFC limitation to simple tasks and the jobs identified by the VE which had a DOT reasoning level of R2.  Plaintiff explains as follows:

> It is well established in Ninth Circuit case law that both Reasoning Level 2 job requirements in the DOT are not compatible with a limitation to non-complex work. See, Zavalin v. Colvin, 778 F.3d 842 (9th Cir 2015) (holding that "Today, we join the Tenth Circuit and hold that there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning"); see also, Rounds v. Comm'r of SSA, 807 F.3d 996, 1003-1004 (9th Cir. 2015) (holding that "because the ALJ did not recognize the apparent conflict between Rounds' RFC [one to two step tasks] and the demands of Level Two reasoning, the VE did not address whether the conflict could be resolved.

Br. at 11.

The distinction between those cases and the case at bar is apparent from the block quote. *Zavalin* addressed R3 jobs, whereas here the jobs at issue were R2 jobs. *Rounds* addressed "one to two step tasks," whereas here the RFC limited Plaintiff to "simple" tasks. That distinction may seem trivial, but it was integral to the holding in *Rounds*:

> The ALJ's failure to reconcile this apparent conflict was not harmless. In his RFC assessment, the ALJ did not merely restrict Rounds to 'simple' or 'repetitive' tasks. Instead, he expressly limited her to 'one to two step tasks . . .

*Rounds*, 807 F.3d at 1004.

Similarly in *Davis* the Ninth Circuit explained that "simple work is consistent with positions requiring Reasoning Level 2." *Davis v. Saul*, 846 F. App'x 464, 466 (9th Cir. 2021). District courts and other circuit courts have similarly found no conflict between simple work and the demands of R2 jobs, though courts have held that a limitation to simple work is inconsistent with *R3 jobs*. *See, e.g. Meissl v. Barnhart*, 403 F. Supp. 2d 981 (C.D. Cal. 2005) (finding no conflict between limitation to simple/routine tasks and jobs with a reasoning level of R2); *Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019) (same); *Kinney v. Berryhill*, No. CV 17-03758 AFM, 2018 WL 1145694, at *3 (C.D. Cal. Jan. 25, 2018) (finding conflict between RFC limitation to simple/routine tasks and jobs with a reasoning level of R3, but no conflict with R2 jobs, and finding harmless error where the VE identified one R3 job and two R2 jobs that the claimant could perform); *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (holding that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning").

## C. Plaintiff's Subjective Complaints

### 1. Applicable Law

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir.

2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

As the Ninth Circuit recently clarified in *Ferguson*, although an ALJ may use "*inconsistent* objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the claimant uses to relieve pain or other symptom; and, 7- Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

**2.     Analysis**

Here the ALJ found the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms but found that "As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the claimant had conservative treatment in the period beginning March 11, 2020 and her mental health was stable in this period as well." AR 33-34.

Thereafter, the ALJ provided a three-paragraph summary as quoted above concerning the Kaiser Permanente psychiatric treatment records beginning March 11, 2020. The parties dispute the sufficiency of that discussion. For the same reasons explained above, the ALJ's discussion again fell short. Objectively, the examination findings were not entirely benign concerning mood, affect, insight, and judgment, among others. Even if the examination findings were largely benign, the statements made to treating providers about her symptoms and their limiting affects are not functionally irrelevant. Plaintiff consistently reported cutting, desire for self-harm, and/or suicidal ideation, and the ALJ failed to acknowledge any of those statements or consider their functional impact.

However, Plaintiff does not identify any other subjective statements she contends warranted additional discussion or consideration, such as from her hearing testimony or her function reports. Plaintiff did not summarize any such evidence in her factual summary, nor did she cite or reference any such subjective statements under her third argument header. Thus, the discussion does not break much new ground apart from her first argument.

### VI. Conclusion

Remand is appropriate for the ALJ to reconsider the subjective and objective evidence post-dating Plaintiff's March 9, 2020 discharge from the intensive psychiatric program, specifically with focus on Plaintiff's continued symptoms such as suicidal ideation, cutting, and desire for self-harm;

the functional impact of those symptoms generally and their impact specifically as it relates to off task behavior and absenteeism; to develop the record as necessary, which could potentially include a consultative opinion, though that is not necessarily required; hold a new hearing and issue a new decision.

**VII.    Order**

For the reasons stated above, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, it is ordered that the Commissioner's decision is reversed, and this matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The Clerk of Court is directed to enter judgment in favor of Plaintiff Vera Ann Jackson and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **May 20, 2024**              **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE